IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| WILLIAM BRYANT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:13cv202 (HEH) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

William Bryant ("Plaintiff") is 44 years old and worked as a carpenter's helper, a dispatcher, a lawn service salesman, a mill supervisor, a plumber's helper and a warehouse driver. On June 16, 2009, Plaintiff applied for Social Security Disability ("DIB") under the Social Security Act (the "Act") with an amended alleged onset date of April 20, 2011, claiming disability due to hepatitis C, liver cirrhosis, chronic liver disease and degenerative disc disease with stenosis. Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB. The Appeals Council subsequently denied Plaintiff's request for review on February 5, 2013.

Plaintiff now challenges the ALJ's denial of DIB, asserting that the ALJ incorrectly assessed the weight afforded to Plaintiff's treating physician's opinion and Plaintiff's credibility, and therefore that substantial evidence does not support the ALJ's determination that Plaintiff maintained the ability to perform light work. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF. No. 9) at 16-27.)   Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary

judgment, which are now ripe for review.[1]  Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is the Court's recommendation that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Plaintiff challenges whether substantial evidence supported the ALJ's determination to deny Plaintiff DIB benefits.  Therefore, Plaintiff's educational and work history, medical history, consulting physician's opinions, reported activities of daily living, third party assessments and Plaintiff's hearing testimony are summarized below.

A.     Plaintiff's Education and Work History

Plaintiff is 44 years old and graduated from high school.  (R. at 43.)  Plaintiff earned a certificate from a computer learning school in Computerized Business Systems.  (R. at 44.)  He previously worked as a carpenter's helper, as a dispatcher, in lawn sales, as a mill supervisor, as a plumber's helper and as a warehouse driver.  (R. at 164.)  Plaintiff stopped working in May 2009, citing a fall at work that caused back pain.  (R. at 163.)

---

[1]      The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

B.     Plaintiff's Medical History

On January 15, 2008, Susan Holland, M.D., examined Plaintiff for lower back pain radiating to his left leg that caused numbness. (R. at 216.) Dr. Holland indicated that Plaintiff suffered mild disc narrowing at L4 to L5 and that Plaintiff's lumbar spinal canal appeared narrow. (R. at 216.) On January 24, 2008, Plaintiff underwent an MRI relating to his back pain that radiated to his hip and left leg. (R. at 214.) Dr. Holland noted that Plaintiff experienced moderate central stenosis at L4 to L5. (R. at 215.) The MRI revealed no evidence of recurrent disc herniation, but there appeared to be tissue granulation within Plaintiff's epidural. (R. at 215.)

On May 7, 2008, Dr. Holland indicated that Plaintiff anxiously awaited undergoing back surgery. (R. at 236.) Plaintiff had undergone back surgery twice before. (R. at 236.) Dr. Holland noted that Plaintiff suffered from liver disease and hepatitis C. (R. at 236.) Plaintiff smoked a pack of cigarettes each day and did not currently drink alcohol. (R. at 236.)

On May 22, 2008, Charles J. Azzam, M.D., examined Plaintiff in preparation for his upcoming surgery and lumbar fusion. (R. at 272.) However, Plaintiff's platelet count registered low and would require treatment before he could undergo surgery. (R. at 272.) Plaintiff would require a platelet transfusion before and after surgery. (R. at 272.) Plaintiff was admitted to Inova Fairfax Hospital on June 8, 2008, to prepare for his lumbar spine surgery scheduled for June 10, 2008. (R. at 227.) Plaintiff experienced tenderness in his L1 to L3 lumbar area. (R. at 227.) Dr. Azzam noted that Plaintiff suffered from alcoholism, though Plaintiff recently cut back his alcohol intake from twelve to six beverages per day. (R. at 227-28.)

Plaintiff sought treatment from Peter W. K. Wong, M.D., on July 1, 2008. (R. at 238.) Dr. Wong counseled Plaintiff regarding the side effects and benefits of his treatment. (R. at

238.) Though Plaintiff indicated that he stopped drinking, Plaintiff drank alcohol the night before the appointment. (R. at 238.)

On May 4, 2009, Plaintiff returned to Dr. Holland, complaining of lower back and left hip pain stemming from a fall at work. (R. at 258.) Plaintiff could walk, but experienced pain. (R. at 258.) He experienced decreased range of motion in his back and tenderness to palpation. (R. at 258.) Dr. Holland instructed Plaintiff to continue treating the pain with Ultram and gave Plaintiff a work-release note, ordering three days of no work and two weeks of light duty. (R. at 258.) During Plaintiff's June 18, 2009 appointment, Plaintiff complained of worsening back pain and numbness in his left leg. (R. at 256.) Plaintiff declined x-rays due to the cost and did not undergo treatment for his hepatitis C. (R. at 256.) He suffered tenderness throughout his back. (R. at 256.) Plaintiff indicated that he could do physical therapy, but was unsure whether he could afford it. (R. at 256.) While Dr. Holland noted that Plaintiff had spinal stenosis, Plaintiff could not undergo surgery due to his low platelet counts. (R. at 257.) Plaintiff started drinking again, since he had been off from work. (R. at 257.)

Plaintiff followed up with Dr. Holland on April 20, 2011, and complained that he experienced worse back pain. (R. at 385.) Plaintiff continued treatment for his hepatitis C and he reported that it had cleared from his blood. (R. at 385.) Dr. Holland prescribed Vicodin and noted that Plaintiff would be considered for surgery once his platelet count improved. (R. at 385.) On June 15, 2011, Plaintiff continued to complain of back pain, which increased when he was active. (R. at 383-84.) However, Vicodin "somewhat controlled" the pain. (R. at 383.) During Plaintiff's August 30, 2011 appointment, Dr. Holland noted that Plaintiff's pain was "marginally controlled," but Plaintiff still experienced some pain. (R. at 381.)

On January 12, 2012, Dr. Holland opined that Plaintiff could not work in any type of job due to his "severe back pain." (R. at 396.) She noted that Plaintiff stopped drinking in March 2010, and began a more aggressive treatment regimen. (R. at 396.) While surgery would be beneficial to Plaintiff's condition and ability to work, Dr. Holland assessed that Plaintiff needed to restore his liver condition and control his hepatitis C. (R. at 397.) She opined that Plaintiff had a limited ability to "sustain any kind of physical activity," that standing or walking for five minutes caused pain to radiate through his left leg, that sitting upright caused "fairly severe" pain and that his pain increased through the day, especially with activity. (R. at 397.) Plaintiff's pain could be lessened by resting in a recumbent position and taking medication. (R. at 397.)

C.    Non-treating State Agency Physician Opinion

Plaintiff underwent a consultative examination by Christopher Newell, M.D., on April 29, 2010. (R. at 302-08.) Dr. Newell opined that Plaintiff could stand and walk for about four hours and could sit for about six hours during an eight-hour work day. (R. at 306.) Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds. (R. at 306.) Dr. Newell indicated that Plaintiff should limit his bending, stooping and squatting. (R. at 306.) Plaintiff experienced no manipulative, visual or communicative limitations. (R. at 306-07.) He needed no assistive device to ambulate. (R. at 307.)

On May 7, 2010, James Grim, M.D., opined that Plaintiff could occasionally lift or carry twenty pounds and could frequently lift or carry ten pounds. (R. at 315-21.) Plaintiff could stand and/or walk two hours during an eight-hour work day and sit for about six hours in an eight-hour work day. (R. at 315.) His pushing and pulling ability was limited in his lower extremities. (R. at 315.) Plaintiff could frequently balance and climb ramps and stairs. (R. at 316.) He could occasionally stoop, kneel and crouch. (R. at 316.) He could never crawl or

climb ladders, ropes or scaffolds. (R. at 316.) Plaintiff experienced no manipulative, visual, communicative or environmental limitations. (R. at 317-19.)

On January 10, 2011, Luc Vinh, M.D., completed a Disability Determination Explanation on reconsideration. (R. at 72-81.) Dr. Vihn opined that Plaintiff could lift twenty pounds occasionally and lift ten pounds frequently. (R. at 78.) Plaintiff could walk and/or stand for four hours during an eight-hour work day and sit about six hours during an eight-hour work day. (R. at 78.) He had unlimited ability to push and/or pull. (R. at 78.) Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds. (R. at 78.) He could also occasionally balance, stoop, kneel, crouch and crawl. (R. at 78-79.) Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. at 79.)

D.     Plaintiff's Activities of Daily Living

On January 3, 2010, Plaintiff completed a Function Report. (R. at 171-78.) Plaintiff wrote that he lived with his family. (R. at 171.) Plaintiff described a typical day to involve getting up, fixing tea or drinking water, watching television until he got hungry and microwaving something to eat. (R. at 171.) He would then watch television or check his email and perform some light cleaning until his wife returned home from work. (R. at 171.) He would spend the rest of the evening watching television until he went to sleep. (R. at 171.)

Plaintiff did not take care of other people, but tended to his cats by giving them food or water if needed, though his daughter primarily cared for the animals. (R. at 172.) Plaintiff indicated that his condition affected his sleep in that he needed to sleep in a recliner. (R .at 172.) Plaintiff's condition did not affect his ability to dress himself, care for his hair, feed himself or use the toilet. (R. at 172.) However, it affected his ability to bathe and shave, as he needed a

stool in the shower, because it hurt to stand too long. (R. at 172.) Plaintiff needed no reminders to take care of his personal needs or take his medicine. (R. at 173.)

Plaintiff prepared his own meals a few times a month, which included sandwiches or something microwaveable. (R. at 173.) He noted that while it did not take him longer than normal to prepare food, it was painful to stand. (R. at 173.) Plaintiff mowed the lawn on a riding lawn mower about once a week for an hour with breaks. (R. at 173.) He could perform some cleaning, but needed help weeding, vacuuming and mopping. (R. at 173.)

Plaintiff went outside once daily. (R. at 174.) When he went out, he would ride in a car and it would be for a "quick stop like [the] bank or 7-[Eleven]." (R. at 174.) Plaintiff did not drive, because he did not have his driver's license. (R. at 174.) Plaintiff shopped in stores for food and clothing about three or four times per week with his wife for about twenty minutes at a time (R. at 174.) He could count change, handle a savings account, use a checkbook and pay bills when he had enough money to pay them. (R. at 174.)

Plaintiff's hobbies included watching television, drawing and using the internet. (R. at 175.) He noted that he does these daily and that he draws fairly well. (R. at 175.) Since his condition began, Plaintiff indicated that he could no longer play basketball or take walks. (R. at 175.) He spent time with others and indicated that he talked to friends and family everyday via telephone or computer and in person twice weekly. (R. at 175.) When visiting with friends or family in person, they watched movies. (R. at 175.) Plaintiff did not need reminders to go places, but required someone to accompany him places to get there. (R. at 175.)

Plaintiff marked that his condition affected his ability to lift, squat, bend, stand, reach, walk, kneel and climb stairs. (R. at 176.) Plaintiff's condition had no effect on his ability to sit, use his hands, talk, hear, see, remember, complete tasks, concentrate, understand, follow

instructions and get along with others. (R. at 176.) He could lift about twenty-five pounds. (R. at 176.) Plaintiff could stand for a couple of minutes and walk about the length of a supermarket aisle before he needed to rest for roughly thirty seconds. (R. at 176.) He finished what he started, followed written instructions "very well" and followed spoken instructions "good." (R. at 176.) Plaintiff got along well with authority figures and never lost a job on account of having problems getting along with others. (R. at 177.) He could handle stress and changes in his routine. (R. at 177.) Plaintiff used a wheelchair, which was not prescribed by his doctors, if out at a museum or place that required a lot of standing or walking. (R. at 177.)

E.     Third Party Assessments

On December 4, 2011, Plaintiff's wife, Denise G. Bryant, prepared a Statement Regarding Disabilities and Limitations of William M. Bryant Due to Disability. (R. at 204.) Mrs. Bryant indicated that Plaintiff's pain required him to sleep in a recliner in the Fall of 2008. (R. at 204.) He stopped working in May 2009 due to an accident at work in which he fell. (R. at 204.) His pain affected Plaintiff's ability to communicate with his family. (R. at 204.) He spent all day lying down, but would stand up to relieve the pain every once in a while. (R. at 204.) Plaintiff could not concentrate, because he focused on his pain. (R. at 204.)

Plaintiff could not walk straight and needed to use a wheelchair or cart for support when shopping. (R. at 205.) He struggled getting into the car and experienced difficulty balancing. (R. at 205.) Plaintiff could vacuum parts of the house, one room at a time, and mow parts of the yard. (R. at 205.) He sometimes prepared meals, but had difficulty standing for long periods of time. (R. at 205.)

On December 4, 2011, Plaintiff's daughter wrote a letter detailing her father's condition and its effects. (R. at 201.) She indicated that Plaintiff could not go places that required a great

deal of walking. (R. at 201.) She described an occasion when Plaintiff's back pain caused her family to leave a restaurant without ordering and stop on the side of road during the drive home. (R. at 201.) She recalled that Plaintiff fell in the bathroom and hit his head, which caused him to black out. (R. at 201.) She explained that Plaintiff mowed their yard with a riding mower, but this caused pain. (R. at 201.) Plaintiff hardly cooked after the onset of his condition. (R. at 201.) He could no longer play basketball, walk the dog or go sledding. (R. at 202.)

On December 4, 2011, Plaintiff's mother-in-law, Frances Gaudet, provided a witness statement and noted that Plaintiff became depressed since the onset of his condition. (R. at 203.) Because of his pain, Plaintiff rarely joined family activities. (R. at 203.) She explained that Plaintiff's pain was visible when standing, sitting or walking. (R. at 203.)

On December 19, 2011, Plaintiff's friend Shelby Baker wrote a letter on Plaintiff's behalf and noted that she knew Plaintiff for twenty years. (R. at 199-200.) She explained that Plaintiff's condition affected Plaintiff's ability to care for his family and household. (R. at 199.) Ms. Baker also indicated that he was no longer sociable and rarely smiled or spoke. (R. at 199.)

F.     Plaintiff's Testimony

Plaintiff, represented by counsel, testified at a hearing in front of an ALJ on February 2, 2012. (R. at 35.) He was 42 years old and lived with his wife and 17 year-old daughter. (R. at 42-23.) Plaintiff stated that he sat in a recliner all day to allow him to lay down as necessary, because he could not sit in one position for lengths of time due to pain in his back and lower leg. (R. at 49-50.) He could sit for an hour before needing to move due to pain. (R. at 54.) Plaintiff also experienced pain when standing and walking. (R. at 50.) He estimated that he could stand for five to ten minutes before needing support and could walk about fifty yards. (R. at 54.) Plaintiff could lift about thirty to forty pounds. (R. at 54.)

Plaintiff described the pain as very painful and, when experiencing the pain, he could not think of anything else. (R. at 51.) Plaintiff took Vicodin three times daily. (R. at 51.) He explained that it did not help with the pain, but it eased the other discomforts that he experienced. (R. at 51.) While Plaintiff did not feel strong pain constantly, he felt some pain constantly. (R. at 51.) Typically, Plaintiff's pain registered at a four or a five on a scale of one to ten. (R. at 52.) However, while Plaintiff moved around, his pain level rose to a nine on a scale of one to ten. (R. at 52.) When he took his medication, his pain registered at a three or four on a scale of one to ten. (R. at 52.)

Plaintiff could not lay flat or on his stomach, so he laid on his side to stretch his back. (R. at 55.) He estimated that he laid this way about three or four times each day for a couple hours at a time. (R. at 55.) Plaintiff changed positions to alleviate the pain and sometimes took hot showers. (R. at 56.) Stress, movement and activity worsened Plaintiff's pain. (R. at 56.) Plaintiff experienced no difficulty using his fingers. (R. at 62.)

Plaintiff typically spent his days watching television. (R. at 58.) He watched movies for about seven hours daily. (R. at 58.) He spent about an hour or two each day on the computer and checked his Facebook page. (R. at 59.) Plaintiff played in poker tournaments for about fifteen to twenty minutes each night and also played Words with Friends for about ten minutes. (R. at 60.) Plaintiff named drawing as a hobby, but he could go months without drawing. (R. at 60.)

Plaintiff did not shower everyday due to pain and typically stayed in sweat pants that he slept in all day. (R. at 57.) He changed his shirt daily. (R. at 57.) Plaintiff cooked meals on a weekly basis, but needed a chair to sit on while cooking. (R. at 57.) He vacuumed weekly and laundered his clothes as needed, typically one load of laundry per week. (R. at 57.) Plaintiff did

not drive, because he lost his license in an alcohol-related incident. (R. at 58.)  However, Plaintiff had been sober for two years. (R. at 58.)  He rarely went out, but friends came over to visit every other week. (R. at 61.)  During their visits, they watched a movie, watched television or played a video game. (R. at 61.)  He went grocery shopping with his wife about twice a week. (R. at 62.)

Plaintiff attended one of his daughter's parent-teacher conferences. (R. at 61.)  He also went to a museum with his daughter. (R. at 61.)  However, this required him to use a wheelchair, because visiting the museum involved walking around. (R. at 61.)  Plaintiff visited with his extended family a few times a year. (R. at 62.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on June 16, 2009, claiming disability due to hepatitis C, liver cirrhosis, chronic liver disease and degenerative disc disease with stenosis with an amended alleged onset date of April 20, 2011. (R. at 17, 19.) The Social Security Administration ("SSA") denied DIB Plaintiff's claims initially and on reconsideration.[2] (R. at 17.)  On February 2, 2012, Plaintiff, represented by counsel, had a hearing before an ALJ. (R. at 17.)

The ALJ issued a decision on February 15, 2012, finding that Plaintiff was not entitled to DIB under the Act. (R. at 27.)  The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on February 5, 2013, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court. (R. at 1-3.)

---

[2]     Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. QUESTIONS PRESENTED

1. Did the ALJ err in affording less than controlling weight to Plaintiff's treating physician's opinions?

2. Did the ALJ err in assessing Plaintiff's credibility?

3. Does substantial evidence support the ALJ's determination that Plaintiff could perform limited light work?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citations and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if the findings are supported by

substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] his physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe

---

[3]     SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in

---

[4]     Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5]     RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.,* 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A.     The ALJ's Opinion

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 20, 2011, and that Plaintiff met the insured status requirement of the Act through December 31, 2014. (R. at 19.) At step two, the ALJ determined that Plaintiff suffered severe impairments in the form of hepatitis C, liver cirrhosis, chronic liver disease and degenerative disc disease with stenosis. (R. at 19.) At step three, the ALJ concluded that Plaintiff's impairments did not meet the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 20.)

The ALJ then determined that Plaintiff had the RFC to perform limited light work. (R. at 21.) Plaintiff's limitations required that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolding. (R. at 21.) Further, Plaintiff could stand and walk for four hours in an eight-hour work day. (R. at 21.) In making

this determination, the ALJ considered all of the evidence and found that the Plaintiff's

medically determinable impairments could be expected to cause Plaintiff's alleged symptoms.

(R. at 22.)  However, the ALJ found that Plaintiff's statements regarding the intensity,

persistence and limiting effects of the symptoms were not credible to the extent that they were

inconsistent with Plaintiff's ability to perform light work.  (R. at 22.)  In further determining

Plaintiff's RCF, the ALJ afforded no weight to Dr. Holland's opinions, as they were inconsistent

with the treatment records and Plaintiff's admitted activities of daily living.  (R. at 25.)

At step four, the ALJ determined that the Plaintiff was capable of performing his past

work as a dispatcher and lawn service salesperson, as the work activities required in such

positions were not precluded by Plaintiff's RFC.  (R. at 25.)  Therefore, the ALJ ultimately found

that Plaintiff suffered no disability from his alleged onset date through the date of the ALJ's

decision.  (R. at 27.)

Plaintiff now argues that the ALJ erred in assessing Plaintiff's credibility and in afforing

Plaintiff's treating physician's opinions less than controlling weight.  (Pl.'s Mem. at 16-27.)

Because Plaintiff argues that the ALJ erred in weighing the evidence, Plaintiff contends that

substantial evidence fails to support the ALJ's determination that Plaintiff maintained the ability

to perform limited light work.  (Pl.'s Mem. at 28.)  Defendant contends that substantial evidence

supports the ALJ's determinations.  (Def.'s Mot. for Summ. J. and Mem. in Supp. ("Def.'s

Mem.") (ECF No. 12) at 6-13.)

B.    The ALJ did not err in assigning less than controlling weight to Plaintiff's treating
      physician's opinions.

Plaintiff argues that the ALJ applied the incorrect legal standard in assigning no weight to

Dr. Holland's opinions, because the ALJ failed to consider all of the factors required.  (Pl.'s

Mem. at 11-13.)  Further, Plaintiff contends that no inconsistencies exist between the medical

records and Dr. Holland's opinion; therefore, the ALJ's determination lacks the support of substantial evidence. (Pl.'s Mem. at 16-21.) Defendant argues that the ALJ properly evaluated the record and that substantial evidence supports the ALJ's decision to afford no weight to Dr. Holland's opinions. (Def.'s Mem. at 11-13.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. 20 C.F.R. § 404.1527(d)(3)-(4), (e).

The ALJ is required to consider the following when evaluating a treating physician's opinions: (1) the length of the treating physician relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating physician; and (6) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6). However, those same regulations specifically vest the ALJ — not the treating physicians — with authority to determine whether a claimant is disabled as that term is defined by statute. 20 C.F.R. § 404.1527(e)(1).

Here, in finding that Plaintiff had the RCF to perform limited light work, the ALJ was forced to reconcile divergent opinions offered by Plaintiff's treating physician and those offered by state agency psychologists. Therefore, the ALJ assigned no weight to Dr. Holland's opinions and assigned great weight to Dr. Newell's opinions. (R. at 24-25.) Dr. Holland opined that Plaintiff was "unable to work in any type of job," due to his "severe back pain." (R. at 396.) Further, Dr. Holland determined that Plaintiff could not sustain any kind of physical activity, that standing or walking for five minutes caused pain to radiate through his left leg, that sitting upright caused "fairly severe" pain and that pain increased through the day, especially with activity. (R. at 397.) Plaintiff's pain could be lessened by resting in a recumbent position and by taking medication. (R. at 397.)

In making the determination to afford no weight to Dr. Holland's opinions, the ALJ considered all of the evidence as required by 20 C.F.R. § 404.1527. (R. at 21.) Specifically, ALJ considered the medical evidence, Plaintiff's activities of daily living and opinion evidence. (R. at 21-25.) The ALJ determined that Dr. Holland's opinions were inconsistent with Plaintiff's treatment records and were inconsistent with Plaintiff's admitted activities of daily

living. (R. at 25.) Thus, the ALJ applied the correct legal standard when determining the weight assigned to Dr. Holland's opinion.

Substantial evidence supports the ALJ's determination that Dr. Holland's opinion is inconsistent with Plaintiff's medical records. On June 15, 2011, Plaintiff indicated that Vicodin "somewhat controlled" Plaintiff's pain. (R. at 382-83.) During Plaintiff's appointment on May 4, 2009, Plaintiff indicated that he could walk, but experienced pain. (R. at 258.) On August 30, 2011, Dr. Holland noted that Plaintiff's pain was "marginally controlled." (R. at 381.)

Plaintiff's admitted activities of daily living also provide substantial evidence to support the ALJ's determination. Plaintiff could dress himself, care for his hair, feed himself and use the toilet. (R. at 172.) He prepared his own meals and could perform some cleaning. (R. at 173.) Plaintiff mowed the lawn on a riding lawn mower about once a week for an hour with breaks. (R. at 173.) Plaintiff shopped in stores for food and clothes about three or four times per week with his wife for about twenty minutes at a time. (R. at 174.) He also made quick trips to 7-Eleven or the bank. (R. at 174.) Plaintiff indicated that his condition had no effect on his ability to sit, use his hands, talk, hear, see, remember, complete tasks, concentrate, understand, follow instructions and get along with others. (R. at 176.) He could lift about twenty-five pounds. (R. at 176.)

Third-party function reports further support the ALJ's determination, as Plaintiff's wife wrote that Plaintiff could vacuum parts of the house (one room at a time), mow parts of the yard and sometimes prepare meals. (R. at 205.) Therefore, substantial evidence supports the ALJ's determination to assign less than controlling weight to Dr. Holland's opinion.

C.     The ALJ did not err when assessing Plaintiff's credibility.

Plaintiff argues that the ALJ applied the incorrect legal standard when assessing Plaintiff's credibility relating to his liver disease. (Pl.'s Mem. at 22-24.) Further, Plaintiff

contends that the record does not support the ALJ's assessment of Plaintiff's credibility relating to his back pain. (Pl.'s Mem. at 24-27.) Defendant argues that substantial evidence supports the ALJ's assessments. (Def.'s Mem. at 8-11.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594 (4th Cir. 1996); *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

It is well established that a plaintiff's subjective allegations of pain are not, alone, conclusive evidence that a plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

The ALJ found that Plaintiff's medically determinable impairments could be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms of the symptoms were not credible to the extent that they were inconsistent with Plaintiff's ability to perform light work. (R. at 22.) Regarding the ALJ's assessment of Plaintiff's credibility relating to his liver disease, the ALJ made his determination on the basis that medical records were inconsistent with his alleged symptoms and Plaintiff's non-compliance with treatment. (R. at 23.) Regarding Plaintiff's credibility relating to his back pain, the ALJ indicated that Plaintiff's symptoms were inconsistent with Plaintiff's activities of daily living and third-party function reports. (R. at 24.)

Plaintiff argues that the ALJ applied the incorrect legal standard in assessing Plaintiff's credibility relating to his liver disease by citing Plaintiff's alcoholism and non-compliance with treatment. (Pl.'s Mem. at 22-23.) This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). As such, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility

determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.,* 5 F.3d 923, 928 (5th Cir. 1993)). Therefore, the ALJ did not err in assessing Plaintiff's credibility relating to his liver disease on the basis of non-compliance and alcohol use.

Further, substantial evidence supports the ALJ's assessment. On June 8, 2008, Dr. Azzam noted that Plaintiff suffered from alcoholism, though Plaintiff recently cut back his alcohol intake from twelve to six beverages per day. (R. at 227-28.) During Plaintiff's June 18, 2009 appointment with Dr. Holland, Plaintiff revealed that he had started drinking again. (R. at 257.) Plaintiff did not undergo treatment for his hepatitis C and stopped seeking treatment for financial reasons. (R. at 256.) During Plaintiff's July 1, 2008 appointment with Dr. Wong, although Plaintiff indicated that he stopped drinking, Plaintiff drank alcohol the night before the appointment. (R. at 238.) Therefore, substantial evidence supports the ALJ's credibility determination relating to Plaintiff's liver diseases.

Regarding the ALJ's assessment of Plaintiff's credibility relating to his back pain, Plaintiff argues that the ALJ's determination lacks the support of substantial evidence. (Pl.'s Mem. at 24-27.) Specifically, Plaintiff argues that the ALJ erred in determining that medication managed Plaintiff's condition. (Pl.'s Mem. at 25-26.) Substantial evidence supports the ALJ's assessment. Indeed, Dr. Holland opined that Plaintiff's pain could be lessened by medication. (R. at 397.) Also, the medical records indicate that Vicodin "somewhat controlled" Plaintiff's pain and that Plaintiff's pain was "marginally controlled." (R. at 381, 383.)

Further, Plaintiff contends that the ALJ erred in making the back-pain credibility determination on the basis that Plaintiff's condition "has not been associated with disorganization of neurological function," as the ALJ provided no meaning for the phrase and it

22

is not relevant in the determination. (Pl.'s Mem. at 27.)  The ALJ specifically mentioned that Plaintiff suffered no "disorganization of motor function." (R. at 23.)  Motor function deals with the ability to use "a muscle, nerve or center that offers or produces movement." *Dorland's Illustrated Medical Dictionary* 384 (32d ed. 2012).  Plaintiff complained that he feels pain "as soon as [he] start[s] to walk around. . . and the longer [he] stay[s] on [his] feet the worse it gets." (R. at 50.)  However, Dr. Holland noted that Plaintiff's condition could not be attributed to his "disorganization of motor function." (R. at 295, 298.)  Therefore, the information is relevant to the cause of Plaintiff's subjective complaints of pain and supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's assessment of Plaintiff's credibility on the basis that the severity and intensity of Plaintiff's back pain were inconsistent with Plaintiff's activities of daily living lacks supporting substantial evidence. (Pl.'s Mem. at 27.)  This Court disagrees and finds that substantial evidence supports the ALJ's determination.  Plaintiff could dress himself, care for his hair, feed himself or use the toilet. (R. at 172.)  He prepared his own meals and could perform some cleaning. (R. at 173.)  Plaintiff mowed the lawn on a riding lawn mower about once a week for an hour with breaks and shopped in stores for food and clothes about three or four times per week with his wife for about twenty minutes at a time. (R. at 174.)  He also made quick trips to 7-Eleven or the bank. (R. at 174.)  Plaintiff indicated that his condition had no effect on his ability to sit and use his hands. (R. at 176.)  He could lift about twenty-five pounds. (R. at 176.)  Therefore, the ALJ did not err in assessing Plaintiff's credibility.

D.    Substantial evidence supports the ALJ's determination that Plaintiff could perform limited light work.

Plaintiff argues that, because substantial evidence fails to support the ALJ's determination regarding Plaintiff's credibility and the weight afforded to Plaintiff's treating physician's opinions, the ALJ was incorrect in concluding that Plaintiff was not disabled. (Pl.'s Mem. at 28.)

Defendant maintains that substantial evidence supports the ALJ's determination that Plaintiff could perform limited light work. (Def.'s Mem. at 6-8.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ will first assess the nature and extent of the claimant's physical limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.

After considering all of Plaintiff's impairments, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except that he could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolding. (R. at 21.) Further, Plaintiff could stand and walk for four hours in an eight-hour work day. (R. at 21.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b). A light job "involves sitting most of the time with some pushing and pulling of arm or leg controls" and one "must have the ability to do substantially all of these activities." *Id.* "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. " *Id.*

24

As determined above, the ALJ did not err in assessing the weight afforded to Plaintiff's treating physician's opinions and Plaintiff's credibility.  Further, substantial evidence supports the ALJ's determination that Plaintiff could perform limited light work.  Plaintiff himself indicated that he could dress himself, care for his hair, feed himself and use the toilet.  (R. at 172.)  He prepared his own meals and could perform some cleaning, including laundry.  (R. at 57, 173.)  Plaintiff mowed the lawn on a riding lawn mower and shopped in stores with his wife.  (R. at 174.)  He also made quick trips to 7-Eleven or the bank.  (R. at 174.)  Plaintiff indicated that his condition had no effect on his ability to sit, use his hands, talk, hear, see, remember, complete tasks, concentrate, understand, follow instructions and get along with others.  (R. at 176.)  He could lift about twenty-five pounds.  (R. at 176.)  Plaintiff could use a computer and check email.  (R. at 59.)  Plaintiff played in poker tournaments and Words with Friends.  (R. at 60.)

Further, Dr. Vihn opined that Plaintiff could lift twenty pounds occasionally, lift ten pounds frequently, walk and/or stand for four hours during an eight-hour work day and sit about six hours during an eight-hour work day.  (R. at 78.)  Plaintiff had unlimited ability to push and/or pull and could occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl.  (R. at 78-79.)  Dr. Grim opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and/or walk two hours during an eight-hour work day and sit for about six hours in an eight-hour work day.  (R. at 315.)  He could occasionally stoop, kneel and crouch.  (R. at 316.)  Therefore, the ALJ did not err in determining that Plaintiff maintained the residual functioning capacity to perform limited light work.

## VI. CONCLUSION

For the reasons set forth herein, it is the Court's recommendation that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED; that Defendant's Motion for Summary judgment (ECF No. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: December 4, 2013