IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| WILLIAM BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 3:13cv202–HEH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This is an action challenging the Social Security Administration's ("SSA") denial of Disability Insurance Benefits ("DIB") to Plaintiff William Bryant ("Plaintiff"). The matter is before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge (ECF No. 14) as to the parties' cross-motions for summary judgment (ECF Nos. 8, 12.), filed pursuant to 28 U.S.C. § 636(b)(1) on December 4, 2013. The R&R recommends that this Court affirm the SSA's decision. Plaintiff filed objections to the R&R (ECF No. 15) and the SSA responded. (ECF No. 16). The Court dispenses with oral argument because it would not materially aid the decisional process.

For the reasons set forth herein, Plaintiff's objections will be overruled and the R&R will be adopted as the opinion of the Court. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 12) will be granted; Plaintiff's Motion for Summary Judgment (ECF No. 8) will be denied; and, the decision of the SSA will be affirmed.

## I. BACKGROUND[1]

William Bryant ("Plaintiff") is a 44-year-old high school graduate with a certificate in Computerized Business Systems. (R. at 43-44.) He has been gainfully employed in a variety of industries, working as a carpenter's helper, a dispatcher, a lawn service salesman, a mill supervisor, a plumber's helper and a warehouse driver. (R. at 44-48, 164.) Beginning around November 2007, Plaintiff experienced lower back pain which radiated to his left leg, causing numbness and interfered with his ability to work. (R. at 163, 215-16.)

### A. Medical History

In January 2008, Susan Holland, M.D., examined Plaintiff, ordered an MRI, and reported mild disc-space narrowing and moderate central stenosis at L4 and L5. (R. at 214-16.) According to Dr. Holland, Plaintiff had two prior back surgeries and suffered from liver disease and hepatitis C. (R. at 236.)

On May 22, 2008, Charles J. Azzam, M.D. examined Plaintiff in preparation for a third back surgery and lumbar fusion. (R. at 272.) Due to his liver diseases, Plaintiff's platelet count was low and required treatment before he could undergo surgery. (R. at 272.) Dr. Azzam noted that Plaintiff suffered from alcoholism, though Plaintiff recently reduced his alcohol consumption from twelve to six beverages per day. (R. at 227-28.)

---

[1] The following facts are drawn from the administrative record, which has been filed under seal pursuant to E.D. Va. Local R. 5 and 7(C). In accordance with these Rules, this Court will endeavor to exclude any personal identifiers from its discussion, and will incorporate Plaintiff's medical information only to the extent necessary for proper analysis. The Court will reference the record using the following citation formation: (R. at [page number].).

2

On July 1, 2008, Plaintiff sought treatment from Peter W. K. Wong, M.D. (R. at 238.) Though Plaintiff indicated to Dr. Wong that he stopped drinking, Plaintiff consumed alcohol the night before the appointment. (R. at 238.)

Plaintiff stopped working on May 1, 2009, citing a fall at work that made his back condition worse. (R. at 163.) He returned to Dr. Holland on May 4, 2009, who treated his pain with medication and reported decreased range of motion. (R. at 258.) Plaintiff returned to Dr. Holland on June 18, 2009, complaining of worsening pain and numbness in his left leg. (R. at 256.) He declined x-rays due to the cost and did not undergo treatment for his hepatitis C. (R. at 256.) Plaintiff told Dr. Holland that he had started drinking again. (R. at 257.) Dr. Holland noted that Plaintiff suffered from spinal stenosis, but could not undergo surgery due to his low platelet counts. (R. at 257.) Dr. Holland opined that Plaintiff would not ever be able to return to work. (R. at 257.)

Dr. Holland reported on April 6, 2010 that Plaintiff's ability to perform work-related activities was hindered because he was "unable to stand for longer than a couple minutes without pain." (R. at 296, 298.)

On April 29, 2010, Plaintiff underwent a consultative examination with Christopher Newell, M.D. (R. at 302-06.) Dr. Newell determined that Plaintiff could both stand and walk for close to four hours and sit for six hours during an eight-hour work day. (R. at 306.) He also indicated that Plaintiff could frequently lift ten pounds and occasionally twenty pounds. (R. at 306.) Moreover, Dr. Newell indicated that Plaintiff did not require an assistive device to ambulate, advising Plaintiff to simply limit

bending, stooping, and squatting. (R. at 306-07). Dr. Newell also noted that Plaintiff experienced no manipulative, visual or communicative limitations. (R. at 306-07.)

On May 27, 2010, James Grim, M.D. concluded that Plaintiff could stand and walk for close to two hours and sit for about six hours over the course of an eight-hour day. (R. at 315.) Like Dr. Newell, Dr. Grim found Plaintiff able to frequently lift ten pounds and occasionally twenty pounds. (R. at 315-316.) Additionally, Plaintiff could periodically stoop, kneel, and crouch, but not crawl or climb ladders. (R. at 315-316.)

On January 10, 2011, Luc Vinh, M.D. completed a Disability Determination Explanation. (R. at 72-81.) Dr. Vinh opined that Plaintiff could stand and walk for about four hours, sit for six hours, and occasionally, balance, stoop, kneel, and crouch. (R. at 78-79.) He also concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds. (R. at 78.) Dr. Vinh also determined that Plaintiff had manipulative, visual, communicative, or environmental limitations. (R. at 79.)

Plaintiff returned to Dr. Holland on April 20, 2011, complaining of worsening pain. (R. at 385.) He indicated that his hepatitis C had cleared from his blood after treatment. (R. at 385.) Dr. Holland prescribed more powerful pain medication, Vicodin, and noted that Plaintiff would be considered for surgery once his platelet count improved. (R. at 385.) Plaintiff reported on June 15, 2011, that Vicodin "somewhat controlled" the pain. (R. at 383.) And on August 30, 2011, Dr. Holland noted that Plaintiff experienced some pain, but it was marginally controlled with medication. (R. at 381.)

On January 30, 2012, Dr. Holland submitted a letter associated with Plaintiff's disability claim in which she opined that Plaintiff was unable to work due to severe back

4

pain, and that his symptoms limit his ability to sustain any kind of physical activity. (R. at 396.) Dr. Holland further reported that while standing or walking for more than approximately five minutes, Plaintiff experiences back pain that radiates into his left leg, that his pain remains "fairly severe" while sitting upright, and that regardless of position, his pain tends to increase over the course of the day, and can be lessened only with medication and rest in a recumbent position. (R. at 397.)

## B. Plaintiff's Reported Activities of Daily Living

On January 3, 2010, Plaintiff completed a function report in which he described a typical day. (R. at 171.) He indicated that although he experienced pain, he usually fixes lunch for himself. (R. at 171.) Plaintiff watches television while sitting or laying down, sometimes checks his email, and performs a little light cleaning, but needed help vacuuming, mopping, and weed eating. (R. at 171-73.) Plaintiff also indicated that he would mow the lawn on a riding mower once a week for one hour with breaks. (R. at 173.) Plaintiff could dress and feed himself, but stated that it was painful to stand in the shower for long. (R. at 172-73.) He noted trouble lifting, squatting, bending, standing, reaching, walking, kneeling, and climbing stairs. (R. at 176.) Plaintiff shopped with his wife three to four times a week for about twenty minutes at a time (R. at 174.) Although not prescribed by his doctor, he would use a wheelchair when out at a museum or any other place that required a lot of walking or standing. (R. at 177.) Plaintiff indicated no trouble sitting, using his hands, communicating, completing tasks, concentrating, or getting along with others. (R. at 176.)

5

Third party function reports submitted in December, 2011, by Plaintiff's wife, daughter, mother-in-law, and a friend corroborated Plaintiff's reports of his daily activities in his January, 2010, function report. (R. at 199-206.) Those reports indicated that Plaintiff visibly experienced pain, requiring him to spend most of the day and sleep overnight in a recliner. (R. at 204.) Plaintiff's wife reported that he could not concentrate because he could only focus on his pain, which affected his ability to communicate with family. (R. at 204.)

On February 2, 2012, Plaintiff testified that he was uncomfortable sitting in one position for any length of time, and that he needed to move after about an hour due to the pain. (R. at 49, 54.) He sat in a recliner at home so that he could lie down as necessary. (R. at 49.) Plaintiff stated that he could stand for five to ten minutes before needing to lean against something or bend over. (R. at 54.) Plaintiff indicated that, on a scale of one to ten, his pain typically registered at a four of five. (R. at 52.) That level rose to a nine when he moved around, but Vicodin reduced his pain to a three or four. (R. at 51-52.)

Plaintiff reported that he typically watched television for most of the day, but would vacuum the living room once a week, do laundry, and occasionally cook while sitting on a chair. (R. at 57.) Plaintiff also estimated that he could lift thirty to forty pounds. (R. at 54.) He continued to grocery shopping with his wife approximately twice a week. (R. at 61.) Plaintiff rarely left the house, but noted he attended one of his daughter's parent-teacher conferences at school and using a wheelchair, visited a museum with her. (R. at 61.) Occasionally his friends visited and they would watch television or play video games. (R. at 61.)

6

## C. Procedural History

Plaintiff applied for DIB on June 19, 2009, claiming disability due to degenerative disc disease with stenosis, chronic liver disease, hepatitis C, and liver cirrhosis, with a May 1, 2009 onset date. (R. at 17, 19.) The SSA denied his claim both initially on May 7, 2010, and upon reconsideration on January 12, 2011. (R. at 17.) On February 2, 2012, Plaintiff, represented by counsel presented his claim to the ALJ. (R. at 17.) Prior to the hearing, Plaintiff amended his onset date to April 20, 2011. (R. at 17, 158.) The ALJ determined that Plaintiff was not entitled to DIB under the SSA in a February 15, 2012 decision. The Appeals Council denied Plaintiff's request for a review of the ALJ's decision on February 5, 2013.

On April 1, 2013, Plaintiff filed a Complaint in this Court, contesting the SSA's decision under 42 U.S.C. § 405(g). Plaintiff challenges the ALJ's application of the treating physician rule with respect to Dr. Holland's opinion and the ALJ's credibility analysis. (Compl. at ¶¶ 6-7.) Both parties filed motions for summary judgment, which were referred to the Magistrate Judge for an R&R. Upon review, the Magistrate Judge concluded that substantial evidence existed to support the ALJ's findings with respect to both the medical opinions and Plaintiff's credibility.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3).

"Determination of eligibility for Social Security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 n. 1 (4th Cir. 2005). At the first step, the claimant must demonstrate that he is not engaged in substantial gainful activity ("SGA") at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has a "severe impairment ... or combination of impairments which significantly limit[ ][his] physical or mental ability to do basic work activities ..." *Id.* § 404.1520(c). At the third step, if the impairment matches or equals one of the impairments listed in the Act, and the impairment lasts—or is expected to last—for at least twelve months, then it constitutes a qualifying impairment and the analysis ends. *Id.* § 404.1520(d); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing impairments). If, however, the impairment does not conform to one of those listed, then the ALJ must compare the claimant's residual functional capacity ("RFC") with the "physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If such work can be performed, then benefits will be denied. Finally, if the claimant cannot perform past work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.* § 404.1520(g)(1).

When reviewing a denial of benefits by the SSA pursuant to 42 U.S.C. § 405(g), this Court must accept the SSA's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson*, 434 F.3d at 653); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996) (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653. In other words, substantial evidence requires more than a mere scintilla, but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

In determining whether substantial evidence exists, the Court must consider the record as a whole. *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). The Court may not, however, weigh conflicting evidence, evaluate the credibility of the evidence, or substitute its own judgment. *Mastro*, 270 F.3d at 176. Thus, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the SSA's decision. *Johnson*, 434 F.3d at 653 (citation omitted). At the same time, the court "must not abdicate ... [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974) (citations omitted). If the SSA's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III.  ANALYSIS

Plaintiff raises two (2) objections to the R&R, arguing that the R&R erroneously found that substantial evidence supported (1) the ALJ's decision to disregard the opinion of Plaintiff's treating physician, and (2) the ALJ's assessment of Plaintiff's credibility

9

relating to his back pain and liver disease. The Court will cabin its analysis to these two (2) issues only. *See United States v. George*, 971 F.2d 1113, 1117 (4th Cir. 1992) ("[T]he court . . . shall make a *de novo* determination of *those portions* of the report or *specified* proposed findings or recommendations to which objection is made.") (emphasis added) (citation and internal quotation marks omitted).

Both of Plaintiff's objections essentially requests that this Court to re-weigh evidence—an exercise beyond this Court's authority. *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted). Because the Court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's findings, the SSA's decision must stand and the Court will adopt the R&R.

### A. Treating Physician Opinion

Plaintiff contends that the ALJ disregarded the "treating physician rule." Plaintiff argues that the ALJ erroneously found the treating physician opinion inconsistent with the medical records and other evidence on the record, and consequently, erred by affording Dr. Holland's opinion no weight.

Under the "treating physician rule," a treating source's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the case record. *Mastro*, 270 F.3d at 178; *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence *or if it is inconsistent with other substantial evidence*, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (emphasis

10

added) (citing *Craig*, 76 F.3d at 590). Thus, it is not enough that there exists *some* evidence to support the treating physician's opinion. If that opinion is "inconsistent with other substantial evidence," the ALJ may give it less weight, as was the case here.

Several inconsistencies existed between Dr. Holland's opinion and other evidence. The examination by Dr. Newell and the review of Plaintiff's records by Drs. Grim and Vinh show similar opinions as to Plaintiff's ability to stand, walk, and sit over the course of a work day. Those records also evince similar assessment of Plaintiff's ability to lift and his mobility in other respects. By contrast, Dr. Holland opined on June 18, 2009 and again on April 6, 2010 that due to the functional limitations caused by Plaintiff's medical conditions he was unable to work.

Plaintiff argues that the opinion of Dr. Newell lacks credence because that exam took place approximately one year before Plaintiff's amended alleged onset date of April 20, 2011. Yet, even following contemporaneous examinations, the state agency physician and Dr. Holland came to opposite conclusions. On April 7, 2010, less than one month prior to Dr. Newell's April 29, 2010 examination concluding that Plaintiff could stand and walk for up to four hours in an eight-hour work day, Dr. Holland reported that Plaintiff was unable to stand for longer than a couple minutes. (R. at 296, 306.)

Plaintiff argues that state agency physicians, Drs. Newell, Grim, and Vinh, examined Plaintiff and his records prior to the onset of his alleged disability, and thus, the ALJ must defer to Dr. Holland's opinion. While the examination and reviews by Drs. Newell, Grim, and Vinh may have occurred prior to Plaintiff's amended onset date, those examinations took place after the date on which Plaintiff initially claimed he was

11

disabled—May 1, 2009. Plaintiff amended his onset date to avoid litigating the issue of his alcoholism. (R. at 157.) Plaintiff's choice to amend onset date was unrelated to changed circumstances of his back condition—his alleged disability. And thus, the Court finds no reason to find the opinions of the state agency physicians unreliable. Moreover, if the court were to look only to opinions offered after the amended onset date, as Plaintiff appears to request, the court would be forced to accept Dr. Holland's January 30, 2012 opinion at face value.

The ALJ properly considered the length, nature and extent of Plaintiff's treatment relationship with Dr. Holland as required by 20 C.F.R. § 404.1527(c)(ii), and ultimately concluded that substantial medical evidence counseled against relying upon Dr. Holland's conclusions and in favor of the opinion of Dr. Newell, who examined Plaintiff. Furthermore, Plaintiff's admitted daily activities in his January 3, 2010, functional evaluation and February 2, 2012, testimony are more consistent with the opinions of Drs. Newell, Grim, and Vinh than with the opinion of Dr. Holland.

The ALJ did not rely on any single piece of evidence, but considered numerous inconsistencies in the record to reach his conclusion. The ALJ did not rely on Plaintiff's admitted daily activities or the opinions of the state agency physicians alone, but considered them together with other medical records and opinions, including those by Dr. Holland. This Court finds that the record adequately supports the ALJ's decision to attribute greater weight to the opinions of Drs. Newell, Grim, and Vinh, as well as Plaintiff's daily activities as documented by the Plaintiff himself and in the third party

function reports, over Dr. Holland's finding of disability. Thus, the ALJ's decision to afford no weight to Dr. Holland's conclusion was supported by substantial evidence.

### B. Credibility Assessment

Plaintiff objects to the R&R insofar as it finds that substantial evidence supports the assessment of Plaintiff's credibility with respect to the ALJ's determination of Plaintiff's residual functional capacity ("RFC")[2] to perform light work.

To determine a claimant's RFC, the ALJ must follow a two-step process. *Craig*, 76 F.3d at 594; SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). First, the ALJ must determine whether medically determinable mental or physical impairments could reasonably be expected to produce the alleged symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p; 20 C.F.R. § 416.929(b)–(c). If this showing is made, the analysis proceeds to the second step. *Craig*, 76 F.3d at 595. The ALJ then evaluates the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms to determine the extent to which the symptoms limit his ability to do basic work activities. *Craig*, 76 F.3d at 595; SSR 96-7p; 20 C.F.R. § 416.929(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about his pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain, and any other evidence

---

[2] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities on a 'regular and continuing basis.' A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must describe the maximum amount of work-related activity the claimant can perform—in an ordinary work setting on a regular and continuing basis—based on the evidence available on the case record. *Id.*

13

relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 416.929(c)(1)–(3), 404.1529(c)(1)–(3). When the individual's complaints regarding the limiting effects of his disability do not correlate with objective medical evidence, the ALJ must make a finding on the individual's credibility based on the entire case record. SSR 96-7p.

The Fourth Circuit and this Court have repeatedly held that the credibility determinations of an ALJ should be given "great weight" because the ALJ "had the opportunity to observe the demeanor and determine the credibility of the claimant." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)); *see also Gullace v. Astrue*, No. 1:11CV0755, 2012 U.S. Dist. LEXIS 28171, at *81 (E.D. Va. Feb. 13, 2012); *Parker v. Astrue*, No. 3:10CV558, 2011 U.S. Dist. LEXIS 91051, at *15 (E.D. Va. July 28, 2011). Therefore, an ALJ's credibility determinations must be accepted absent "exceptional circumstances," which include "cases where a determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (citations and quotation marks omitted).

The ALJ found that Plaintiff's medically determinable impairments could be expected to cause Plaintiff's alleged symptoms, but Plaintiff's statements and those submitted by third parties regarding the intensity, persistence and limiting effects of the symptoms were not credible to the extent that they were inconsistent with Plaintiff's ability to perform light work. (R. at 22.) Plaintiff argues that the ALJ erred in his

assessment of Plaintiff's credibility by improperly considering his liver disease, which he argues pre-dates the onset of his disability. Plaintiff also argues that the credibility assessment relating to Plaintiff's back pain is erroneous because the ALJ failed to properly weigh Dr. Holland's opinion.

With respect to Plaintiff's liver disease, the R&R noted that Plaintiff reported to Dr. Azzam in June 2008 that he had reduced his alcohol intake from twelve to six beverages per day. (R. at 227-28.) The next month Plaintiff told Dr. Wong that he had stopped drinking, when in fact he had consumed alcohol the night before the appointment. (R. at 238.) In June 2009, Plaintiff revealed to Dr. Holland that he had resumed drinking again. (R. at 257.) Additionally, Plaintiff did not undergo treatment for his hepatitis C and stopped seeking treatment for financial reasons. (R. at 256.)

Plaintiff argues that it was improper for the ALJ to consider his liver diseases and alcoholism because he does not allege that his liver disease caused disabling symptoms. While Plaintiff is correct that the record shows that his liver disease is "asymptomatic," the record also shows that the effects of Mr. Bryant's liver disease and alcoholism have prevented him from receiving necessary treatment—surgery—for his back pain. (R. at 396-97.) Dr. Holland's report indicates that in order to undergo more aggressive treatment for his back, he needed to get his alcoholism under control, which he did in 2010. (R. at 396.) Nevertheless, the treatments for Plaintiff's liver function and hepatitis C affect his platelet levels, preventing him from undergoing back surgery or any other invasive treatment modalities. (R. at 397.) Plaintiff's back condition has been complicated and elongated by his noncompliance with treatments for his liver disease and alcoholism.

15

Plaintiff also suggests his history with alcohol should enhance, rather than diminish his credibility since his decision to cease drinking demonstrates a disciplined commitment to turning his life around. This suggestion inherently contradicts Plaintiff's argument that his liver disease and alcoholism should not have been a factor in the ALJ's assessment of Plaintiff's credibility.

This Court does not find error in the consideration of Plaintiff's liver diseases and alcoholism. Even if it were error to consider conditions predating the onset of Plaintiff's disability, any error would have been negated by Plaintiff's February 2, 2012, testimony. Plaintiff testified before the ALJ that his liver disease and/or the treatment thereof make him fatigued and caused nosebleeds. (R. at 53.) This is inconsistent with the medical records that indicate his liver disease is asymptomatic. (R. at 371.) This erodes Plaintiff's credibility as to the nature, severity and intensity of his symptoms. Furthermore, Plaintiff testified as to the symptoms caused by his liver disease, making it reasonable for the ALJ to consider those symptoms in his assessment.

Given Plaintiff's testimony regarding his liver disease and the objective medical evidence indicating the negative effect that Plaintiff's liver disease has had on the treatment for his alleged disability, it was not in error for the ALJ to consider this in his credibility assessment.

With respect to his back pain, Plaintiff contests the reliance by the ALJ and R&R on his function report dated January 3, 2010. In that report Plaintiff admits that despite his limitations, he was able to prepare simple meals, shop a few times a week using a cart for support, as well as watch television and use the computer and telephone daily. (R. at

171-177.) Plaintiff also indicated that he had no difficulty using his hands and fingers, could lift thirty to forty pounds, and that his limitations had no effect on his ability to sit, complete tasks, concentrate, understand, or follow instructions. (R. at 176.) Third party function reports from Plaintiff's wife and daughter described Plaintiff's ability to mow their lawn on a riding mower, attend a trip to an art museum, and vacuum one room at a time. (R. at 22.) While Plaintiff completed the report in January, 2010, his reported activities did not differ dramatically at the ALJ hearing on February 2, 2012. Plaintiff testified that he is able to sit for approximately an hour before he needs to move for about five to ten minutes before sitting back down again. (R. at 54.) He reports that he has no trouble using his hands or fingers. (R. at 62.) Mr. Bryant also testified that he could lift thirty to forty pounds. (R. at 54.)

Plaintiff also argues that the ALJ and R&R take Dr. Holland's opinion regarding Plaintiff's back pain out of context, complaining that relying on vague phrases such as "somewhat controlled" or "marginally controlled" are improper. (R. at 381, 383.) Yet Plaintiff testified before the ALJ that he does not have a strong pain constantly and that his medication eases his discomfort, corroborating Dr. Holland's notes. (R. at 51-52.) Plaintiff essentially asks this court to reject the objective medical evidence in favor of his subjective complaints of pain, even though his own testimony is inconsistent with his reported pain. Such a request is contrary to the law in this circuit. *See Craig*, 76 F.3d at 591. While Plaintiff contends that the ALJ and R&R rely on outdated reports of Plaintiff's symptoms, his own recent testimony conflicts with the medical evidence,

including the opinion of his treating physician, and supports the ALJ's determination that Plaintiff is capable of performing light work.

The applicable standard for review is not whether one could reasonably reach an opposite determination, but rather whether the ALJ's determination is unreasonable, contradicts other findings, or has no reason at all. Substantial evidence in the record supports the ALJ's credibility determination and no exceptional circumstances give this Court reason to find that the ALJ's determination was unreasonable. The ALJ did not err in assessing Plaintiff's credibility.

## IV. CONCLUSION

Because substantial evidence supports the ALJ's decision to disregard Dr. Holland's opinion and the ALJ's assessment of Plaintiff's credibility, this Court overrules Plaintiff's objections and adopts the R&R. In accordance with the R&R, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The final decision of the SSA is AFFIRMED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept. 29, 2014
Richmond, VA